KARA L. GERVAÍS, ESQ.  (State Bar No. 217134)
**GERVAIS LAW**
10636 Scripps Summit Court, Suite 142
San Diego, CA 92131
Phone (858) 549-1071
Fax (858) 549-1743


Attorneys for Tervon LLC, Sunyata and Eleanor Little and Mario Gutierrez


UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERVON, LLC, a California limited liability company, SUNYATA K. LITTLE and ELEANOR E. LITTLE, individuals; and MARIO GUTIERREZ, an individual;<br><br>          Plaintiffs,<br>     v.<br><br>JANI-KING OF CALIFORNIA, INC., a Texas corporation, JANI-KING INTERNATIONAL, INC., a Texas corporation; and DOES 1-100, Inclusive,<br><br>          Defendants. | ) CASE NO.     3:14-CV-00367-BEN-JMA<br>)<br>) **AMENDED COMPLAINT FOR DAMAGES**<br>)<br>) 1.  Fraud/Deceit by Intentional Misrepresentation<br>)      (Civil Code §§ 1709, 1710)<br>) 2.  Fraud/Deceit by Concealment<br>)      (Civil Code §§ 1709, 1710)<br>) 3.  Negligent Misrepresentation<br>)      (Civil Code §§ 1709, 1710)<br>) 4.  Breach of Contract<br>) 5.  Breach of Contract (Lease)<br>) 6.  Breach of Implied Covenant of Good Faith and<br>)      Fair Dealing<br>) 7.  Violation of Business and Professions Code §<br>)      17200 *et seq.*<br>) 8.  Intentional Infliction of Emotional Distress<br>) 9.  Declaratory Relief<br>)<br>) **REQUEST FOR PUNITIVE DAMAGES**<br>)<br> **DEMAND FOR JURY TRIAL** |

*///*

*///*

Plaintiffs allege:

## PARTIES

1.     Plaintiff, TERVON, LLC, ("Tervon") is a California limited liability company, with its principle place of business in San Diego, California.  At all relevant times, Tervon was owned and operated a Jani-King franchise, performing cleaning and janitorial services.   Tervon purchased the franchise on or about October 2010.

2.     Plaintiffs SUNYATA K. LITTLE and ELEANOR E. LITTLE ("Little") are individuals residing in San Diego, California.  At all relevant times, Little owned and operated a Jani-King franchise, performing cleaning and janitorial services.  Little purchased the franchise on or about October 30, 2008.

3.     Plaintiff MARIO GUTIERREZ ("Gutierrez") is an individual residing in San Diego, California.  At all relevant times, Gutierrez owned and operated a Jani-King franchise, performing cleaning and janitorial services.    Gutierrez purchased the franchise on or about November 2008.

4.     Tervon, Little and Gutierrez are collectively referred to herein as "Plaintiffs."

5.     Defendant Jani-King of California, Inc. ("Jani-King of California") is a Texas corporation with its principal place of business in Addison, Texas.  Jani-King of California has four (4) regional offices in California, which presently are located in Concord, Sacramento, Orange, and San Diego.  Jani-King  of California is a wholly owned subsidiary of Defendant Jani-King, Inc.

6.     Defendant Jani-King International, Inc. ("Jani-King International") is a Texas corporation with its principal place of business in Addison, Texas.  Jani-King International provides administrative and management services to its operating affiliates, Jani-King of California, Inc.

7.     At all times relevant Defendants Jani-King of California Inc. and Jani-King International Inc. will collectively be referred to as "Jani-King" or "Defendants".

8.     Plaintiff is informed and believes and thereon alleges that all Defendants are doing business as Jani-King, and are operating a single, integrated business of providing

cleaning services and janitorial services to commercial clients throughout the State of California.  Jani-King International provides and/or determines the standard policies, forms, contracts and marketing practices utilized by Jani-King of California.

9.    Plaintiff is ignorant of the true names and capacities of the defendants who are sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of said fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by such unlawful conduct.

10.    Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, at all times relevant herein, acted in concert with each and every other defendant, intended to and did participate in the events, acts, practices, and courses of conduct alleged herein, and was a proximate cause of damage and injury thereby suffered by Plaintiff as alleged herein.

11.    At all times relevant herein, each defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment.

## JURISDICTION & VENUE

12.   The Superior Court of the State of California in and for the County of San Diego had jurisdiction over the subject matter pursuant to California Code of Civil Procedure § 410.10 and pursuant to California Business and Professional Code §17200 et seq., and other common and statutory laws.  Jurisdiction was proper because the unlawful acts and practices alleged herein were committed by Defendants within this jurisdiction and the amount of damages sought exceeded the minimum jurisdiction of the state court ($25,000).

13. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1446, 1453, and 1332(d)(2) and the removal proceedings filed by Defendants on or about February 18, 2014.

14.  General and personal jurisdiction against Defendants is also warranted because both Jani-King of California, Inc. and Jani-King International Inc. conducted substantial business in

San Diego County, California as alleged herein and had continuous and systematic contacts in California, and specifically San Diego County, during the times alleged herein and specifically related to the claims made herein.  Thus, Jani-King of California Inc. and Jani-King International, Inc. both had sufficient minimum contacts with California to require both parties to defend their actions in a Court located in California.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) and the removal proceedings filed by Defendants on February 18, 2014.   Further, as stated above, and alleged herein, venue is also proper because Defendants conduct substantial business activity throughout San Diego County, California and Defendants purposefully availed themselves to a California forum and venue.

**GENERAL FACTUAL ALLEGATIONS**

16.     When Plaintiffs purchased the Jani-King franchises, Jani-King required Plaintiffs to sign a standard adhesion contract ("Franchise Agreement") delineating the governing terms of the franchisor-franchisee relationship.  Plaintiff Gutierrez and Jani-King entered into the contract on or about November 2008. Plaintiff Little entered into the contract on or about October 2008. Plaintiff Tervon LLC entered into the contract on or about October 2010.   Attached hereto as Exhibits 1, 2 and 3 are true and correct copies of those Franchise Agreements.

17.     In or about March 2011, Jani-King of California Inc. submitted a bid to the City of San Diego ("City") for janitorial/cleaning services for Qualcomm Stadium, pursuant to the City's Request for Proposal ("RFP").  The contract was to be for a three (3) year period (seasons), with options to renew.

18.     The City's RFP requested bids for an approximate thirty (30) event season, which would include staffing and services for the "Event Day" itself, as well as days for "Post Event" cleaning.  The City's RFP stated *"the typical number of eight (8) hour work shifts following a major event is approximately two and one half (2 ½) to three (3) days but may vary depending on type of event and event scheduling."*

///

///

19.     According to the Jani-King bid submitted in or about March 2011, Jani-King only bid on <u>two days</u> for Post Clean.   Jani-King bid $0.00 for the third day post event clean for ALL of the stadium's events.

20.     It is believed and alleged that Jani-King also submitted a $0 dollar bid for the entire parking lot cleanup, a $0 dollar bid for the outside concrete areas, a $0 dollar bid for the entire stair cleaning, a $0 dollar bid for the entire escalator cleaning, a $0 dollar bid for the entire elevator cleaning, and a $0 dollar bid for the entire End Zone cleaning.   The Jani-King bid submitted to the City was signed by Randall Frazine, on behalf of Jani-King of California, Inc., a Texas corporation.

21.     It is believed and herein alleged that, after Jani-King submitted its bid to the City, a City representative contacted Jani-King to inform them that Jani-King's bid did not include the parking lot cleanup, the third Post Event Clean day for all events, and various other costs.  As a result, Jani-King was informed that its bid was significantly lower than the other bids. The City representative informed Jani-King that the City would allow Jani-King to resubmit a corrected bid.

22.     It is further believed and alleged that in response to this discussion, Jani-King's Randall Frazine informed the City that Jani-King's bid was accurate and that Jani-King would not submit a corrected bid but would "figure something out."

23.     Under the City's contract, the City also required background checks for all personnel working at the stadium to be <u>completed</u> prior to any staff being given a Qualcomm badge.

24.     The City's contract also required a Training Certification for Janitorial Personnel. This required that the bidder certify that all "employees" working under the contract had received specific training related to, including but not limited to, safety, injury, and use of "green cleaning techniques."   The certification required the bidder to identify by name(s) the personnel which would be working under the contract.   In the bid submitted by Jani-King on or about March 14, 2011, Randall Frazine signed the Certification on behalf of Jani-King verifying that all

"employees" had received the necessary training, but listed "TBD" instead of identifying specific personnel by name.

25.     The City's contract also required that the bidder's provided chemicals shall be certified as green.

26.     The City awarded Jani-King the contract in or about March or April 2011.

27.     It is herein believed and alleged that on or about June 22, 2012, Defendants requested a meeting with Plaintiffs at Qualcomm Stadium to discuss the possibility of Plaintiffs accepting the Qualcomm Stadium cleaning and janitorial account.   Present at this meeting were Little, Sotero Enriquez (on behalf of Tervon LLC) and Salvador Gutierrez (authorized by Mario Gutierrez to be present on behalf of Mario Gutierrez).   Another franchise owner was asked to attend, but did not.

28.     At the June 22, 2012 meeting, Paul Johnson, who represented himself to be Jani-King of California Inc.'s Qualcomm Stadium Operations Manager, made a presentation to the Plaintiffs regarding the Qualcomm Stadium account.   Paul Johnson explained that this account was a Jani-King "premier" account.   He also provided each Plaintiff with a Qualcomm Stadium Standard Operating Procedure Manual ("Manual").   This Manual included, but was not limited to, the scope of the janitorial work requirements, each franchise owner's "Quad Descriptions" (which were the areas each franchise owner would be responsible for cleaning) and the Qualcomm season event schedule.   Also included in the Manual were spreadsheets explaining the projected profit to each franchise owner for San Diego Chargers football games and San Diego State Aztec football games ("Spreadsheets").

29.     At this June 22, 2012 meeting, it is believed and alleged that Paul Johnson presented the Manual as well as the two Spreadsheets.   Paul Johnson explained that, based on the historical data of this account, each franchise owner was to expect a $3261.49 profit for each Charger game and a $1178.02 profit for each Aztec game.   These expected profits were also indicated on the Spreadsheets.   The Plaintiffs asked Paul Johnson to confirm that these numbers were correct and Paul Johnson assured Plaintiffs that the numbers were correct and derived from the financials collected from the previous years.

30.     Paul Johnson also presented Plaintiffs with a "Labor Hour Summary" which identified the hours attributable to certain cleaning tasks.   This Labor Hour Summary clearly includes cleaning hours for those tasks on which Jani-King bid $0.00.  Further, at this June 22, 2012 meeting, Paul Johnson was clear that the Post Event clean would be three days.   The Labor Hour Summary presented to Plaintiffs also indicated a third day of post event cleaning.

31.     In reliance on the information presented by Paul Johnson, the Plaintiffs all signed contracts accepting the Qualcomm account.

32.     At no time after Plaintiffs accepted this account were they informed, or required to participate in the specified training required under Jani-King's contract with the City.

33.     At no time after Plaintiffs accepted this account were they informed, or required to use only "green" cleaning products, as was required under Jani-King's contract with the City.

34.     Prior to the first cleaning event, Jani-King contacted the Plaintiffs, informing them that a number of employees had already been working under this account.   Jani-King told the Plaintiffs that since Jani-King could not "employ" them directly, the Plaintiffs would have to pay these employees (for work that was not done during the Plaintiffs' employ).

35.     After the first two cleaning events at Qualcomm, a fourth franchise owner, Carl White (not a party to this lawsuit), was brought in on the Qualcomm account.   After the two following events (August 9 and August 18, 2012), all the franchise owners knew that each of them had incurred significant financial losses and **not** the represented profit Paul Johnson promised.

36.     In or about August 2012, Plaintiffs spoke with Paul Johnson regarding the significant losses sustained by the franchise owners.   It is believed and alleged that, within a week, Paul Johnson once again confirmed that the numbers and expected profits he originally presented to the Plaintiffs were correct.   Plaintiffs relied on Paul Johnson's assurance and continued working on the account.

37.     Thereafter, Sotero Enriquez, on behalf of Plaintiff Tervon LLC, contacted Randall Frazine, President of the San Diego Jani-King office, explaining the significant losses the franchise owners were incurring as a result of the Qualcomm account.   It is believed and alleged

that at this time Jani-King International, Inc. began reviewing this issue, sent representatives to San Diego to oversee this matter and to determine how to resolve the issues surrounding the Qualcomm account.

38.     On or about September 4, 2012, Mr. Frazine called the Plaintiffs to a meeting at Qualcomm Stadium to discuss his proposed resolution.   Present at this meeting were Sean Ayres, Executive Director of Jani-King International, Inc. and David Huntington (new Qualcomm Operations Manager).  The Plaintiffs were informed that Paul Johnson was "no longer with the company" and that David Huntington would now take over his position.  Plaintiffs were informed that Sean Ayres was there from "corporate."   Sean Ayres told Plaintiffs that he was informed of the Qualcomm account situation and would be keeping "apprised" of the matter.

39.     At this meeting, Plaintiff Tervon LLC's Sotero Enriquez presented information on the actual financials related to the Qualcomm account versus those which were originally represented.  It is believed and alleged that Randall Frazine agreed with the numbers presented by Sotero Enriquez and asked where the Spreadsheets came from.   When informed that the Spreadsheets came from the Manual Paul Johnson presented to the franchise owners in order to get them to accept the accounts, Randall Frazine told the Plaintiffs that he knew nothing about the Manual, but the numbers in it were all wrong and the Plaintiffs should just throw the Manual away.

40.     At the September 4, 2012 meeting, it is herein believed and alleged that Randall Frazine informed Plaintiffs that, after consulting with "corporate", a proposed resolution was to restructure the cleaning responsibilities from a "Quad" schedule to a "Task Based" schedule for the post event cleaning.   Randall Frazine also represented to Plaintiffs that there was still a significant profit to be made with this account.

41.     Thereafter, the Plaintiffs implemented this new "task based" approach.   It is believed and herein alleged that, based on advice from "corporate" who is believed and alleged herein to be Sean Ayres, Jani-King brought in other individuals (whom are believed and alleged to be Scott Borland and Hector Garcia), to assist Plaintiffs in accomplishing the new "task based" approach.   However, this new approach actually resulted in further losses, causing some of

Plaintiffs' employees to incur overtime.   Plaintiffs were informed by Qualcomm personnel that the new method was a "waste of time" and it would not decrease cleaning time.

42. After the September 8, 2012 event, the Plaintiffs again assessed the financials and concluded again that no profit was realized and instead, the Plaintiffs were continuing to incur significant losses.   As a result, at this point franchise owner Carl White elected to turn in the account.

43.   For approximately another month, the remaining three franchise owners (Plaintiffs), (Tervon took over the tasks assigned to Carl White) continued to work the account. However, after each event, it still appeared that the numbers did not match those represented by Paul Johnson originally, or any expected profit.   As such, on or about September 24, 2012, Plaintiff Mario Gutierrez elected to turn in the account.

44.   At all times mentioned herein, as a result of Plaintiffs incurring significant losses on this account, it became very difficult for the Plaintiffs to have enough money to pay their employees.   The employees became very angry and upset with the Plaintiffs, creating an environment of distrust between employee and employer.   This also hurt Plaintiffs' working relationship with its employees and its business reputation in general.   The stress of having to figure out how to pay Plaintiffs' employees on time, repay the advances taken from Jani-King and worry about the damage to the business' reputation caused emotional distress to the Plaintiffs.

45.   In addition, making matters worse was the fact that Jani-King was, in essence, holding the Plaintiffs hostage on this account because of the way the accounts were paid and the significant losses being incurred.   Because the Qualcomm account was not generating enough income to cover the employee salaries, the Plaintiffs were forced to take out advances from Jani-King each month in order to cover expenses and pay its employees for the prior month.   As a result, each month the Plaintiffs were reluctant to turn in the account because the Plaintiffs had already taken out an advance that was owed the following month, resulting in a Catch-22.

46.   On or about November 15, 2012, Tervon LLC turned in the account (taking effect December 15, 2012), leaving Plaintiff Little as the sole franchise owner on the account.   Due to

the significant advances Plaintiff Little took out during this time frame, Little could not turn in the account and stayed on until the end of the season (i.e. February 2013).

47.     At the time of purchasing the franchises, all Plaintiffs were presented with a copy of a standardized "Account Acceptance/Finder's Fee Agreement" ("Acceptance Form") as part of the Franchise Disclosure Document.  The Acceptance Form purports to provide the franchise owner with all the terms of a potential account, including, but not limited to, the monthly billing amount, the start date and all fees which will be assessed against the franchise owner on that account.   The Acceptance Form also refers to a "Maintenance Agreement" and "Cleaning Schedule," which apparently the franchise owner is to be given.

48.     At the time of purchasing the franchises, all Plaintiffs were also presented with a copy of a standardized "Equipment Lease Agreement" ("Lease Agreement") as part of the Franchise Disclosure Document.  The Lease Agreement purports to provide the franchise owner with all the terms for when a franchise owner leases equipment for a particular account.

49.     It is believed and alleged that, despite Jani-King's representations that an Acceptance Form and Lease Agreement were part of the standard forms provided to franchise owners, Jani-King routinely fails to and refuses to provide these forms to its franchise owners.  Instead, Jani-King, when "offering" an account to Plaintiffs, will generally only do so verbally and insist that the Plaintiffs agree or not to accept the account immediately, without anything in writing as to the terms of the account itself, or without providing Plaintiffs the opportunity to view the premises which is to be cleaned.    As a result, Plaintiffs are prohibited from knowing whether any information presented by Jani-King, either verbally (or IF an Acceptance Form is provided) is even true.

50.     It is also believed and alleged that Jani-King routinely fails and refuses to enter into written Lease Agreements with its franchise owners.  However, Jani-King continues to charge the franchise owners with fees associated with leasing equipment.   With respect to the Qualcomm Account, none of the Plaintiffs were ever asked to, or signed, a Lease Agreement for any equipment used for the Qualcomm account.   However, Jani-King continually charged Plaintiffs for "leased equipment."

51.     It is also believed and hereon alleged that Jani-King continues to charge Plaintiffs Lease Equipment Fees, even though the Lease Agreement has been terminated and/or the leased equipment has been turned in and accepted by Jani-King.

52.     On or about June 2013, Jani-King of California Inc. entered into several Equipment Lease Assumption agreements ("Lease Assumption Agreements") with Plaintiff Mario Gutierrez, for the lease of certain equipment related to the accounts for Whole Foods. True and correct copies of the Lease Assumption Agreements are attached hereto as Exhibit 4.

53.     It is believed on hereon alleged that, despite Plaintiff Gutierrez turning in the Whole Foods accounts also in June 2013, and returning the leased equipment to Jani-King of California, Inc. in or about September 2013 (which Jani-King accepted), Jani-King of California Inc., continues to improperly bill Plaintiff Gutierrez under the Lease Assumption Agreements.

54.     It is also believed and alleged that Jani-King fails to provide accurate accounting for Plaintiff's accounts, claiming Plaintiffs were required to pay certain fees, including, but not limited to, "royalty fees," accounting fees," Business Protection Plan" fees, finder's fees, miscellaneous fees, advertising fees, administrative fees, charge backs and charge back protection, insurance, complaint fees, and special deductions, without sufficient cause to charge these fees to Plaintiffs.

55.     Jani-King continues to intentionally misrepresent and/or make omissions with respect to the accounts "offered" to Plaintiffs.  Jani-King represented Plaintiffs would receive cleaning accounts that were reasonably and profitably bid so that Plaintiffs would make a profit from working the accounts.  However, Jani-King knows that the structure of the cleaning contracts preclude Plaintiffs from making any profit.

56.     Plaintiffs believe and herein allege that Jani-King engages in a fraudulent scheme of setting contract terms with commercial clients which are not feasible for Plaintiffs to fulfill.

57.     Plaintiffs believe and herein allege that Jani-King engages in a practice of under bidding contracts with its commercial clients thereby precluding Plaintiffs to profit.  Specifically, Jani-King promises to offer janitorial services for prospective and existing clients at amounts and

projected hours (per cleaning) that it knows to be insufficient and/or cannot be reasonably completed for a fair and reasonable hourly wage and profit by Plaintiffs.

58.     Jani-King routinely, negligently and/or intentionally misrepresents the amount of time required to perform cleaning services for a commercial account.  Plaintiffs are not made aware of the actual terms of the contracts between Jani-King and the commercial client upon or before accepting the offer.   Plaintiffs are then forced to hire additional employees at their own expense to service such accounts due to time constraints, thereby precluding Plaintiffs from profiting on the accounts.

59.     Jani-King routinely, negligently and/or intentionally misrepresents the square footage requested to be cleaned for a particular cleaning account.  Plaintiffs are not made aware of the actual terms of the contracts between Jani-King and the commercial client upon accepting the offer.  Plaintiffs are then forced to hire additional employees at their own expense to service such accounts due to the large amount of square footage that required cleaning thereby precluding Plaintiffs from profiting on the accounts.

60.     As part of and in order to effectuate its scheme to systematically underbid janitorial accounts, Jani-King routinely, negligently, and/or intentionally misrepresents the number of hours that will be required to service the accounts offered to franchisees. The accounts typically require substantially more hours of work than Jani-King represents. Jani-King's misrepresentations and/or omissions are knowingly false when made to induce individuals to accept these accounts. Jani-King is aware of the falsity of its misrepresentations and/or omissions because it receives a significant number of complaints from franchisees about the underbid accounts and extra work required to clean accounts and Jani-King continues to make these misrepresentations and omissions.   In the case of the Qualcomm account, Jani-King was specifically notified by the City that Jani-King's bid was grossly underbid.

61.     Jani-King routinely offers accounts through phone calls (or voice mails) to Plaintiffs who are told they must accept the accounts immediately (or without sufficient time to examine them) or will be deemed to have "declined" them. Phone calls from Jani-King provide little, if any, detail about cleaning accounts. Jani-King routinely fails to provide written

AMENDED COMPLAINT FOR DAMAGES                    3:14-cv-00367-BEN-JMA

documentation or information which would enable franchisees to evaluate the actual work requirements to service the account before accepting the account.

62.     The franchise contracts between Plaintiffs and Jani-King are contracts of adhesion in that they were offered to Plaintiffs on a take-it-or-leave-it basis with no opportunity to negotiate any of its terms, including, but not limited to the "forum/venue choice" paragraph, which mandates that any dispute be heard in the state of Texas.   Jani-King includes this forum/venue choice paragraph in its California franchise agreements, despite knowledge that California law and California public policy specifically disfavor such "forum choice" paragraphs in franchise agreements.

63.     The contract is written only is English, is highly technical, legalistic, and contains confusing language. It includes misleading language, misleading section headings, and provisions which purport to waive significant rights buried deep within the small print.  Portions of the franchise agreement are unconscionable, contrary to California law and public policy.

**FIRST CAUSE OF ACTION**
**Fraud/Deceit by Intentional Misrepresentation**
**Violations of California Civil Code §§ 1709, 1710**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

64.     Plaintiffs re-allege and incorporate by reference, each and every allegation in paragraphs 1-63.

65.     At all times relevant to this action, Jani-King intentionally misrepresented material facts including, but not limited to: (a) that Jani-King would guarantee a certain amount of income to Plaintiffs relating to the Qualcomm account and (b) that Plaintiffs would receive cleaning accounts from which they would earn a profit.

66.     Jani-King specifically represented to Plaintiffs that they would each make a certain amount of profit on the Qualcomm account, and even provided Plaintiffs with written materials showing expected profit, and labor/hour summaries.   Jani-King made these representations with full knowledge that they were false because (1) they knew the bid submitted to the City did not support the man hours or cleaning schedules they were asking Plaintiffs to complete, (2) Jani-King had full knowledge that their bid to the City was grossly underbid, (3) Jani-King also knew,

based on historical data, that the post event cleaning of the stadium actually took three days and did not disclose to Plaintiffs that Jani-King's bid only included hours and payment for only two days of post clean.   Jani-King, instead, passed on its grossly underbid Qualcomm account to unsuspecting Plaintiffs.  Jani-King continued to make these misrepresentations knowing that they were false without regard for their truth.

67.    Even after Plaintiffs presented Jani-King with information regarding the unsustainability of the Qualcomm account, Jani-King continued to misrepresent the profitability of the account.   Both Jani-King of California Inc. (by and through, including, but not limited to, Randall Frazine) and Jani-King International, Inc. (by and through, including, but not limited to, Sean Ayres) met with Plaintiffs and continued to represent that the account would result in a significant profit and encouraged Plaintiffs to remain working on the account.

68.    It is believed and hereon alleged that both Jani-King of California Inc. and Jani-King International Inc. were fully aware of the bid Jani-King of California, Inc. submitted to the City, knew that that amounts were underbid and knew that, based on historical data from previous years, the Qualcomm Account could not sustain the profit represented by either Paul Johnson or the profit represented to Plaintiffs in September 2012.   Despite this knowledge, both Jani-King of California Inc. and Jani-King International Inc. continued to represent that the account was profitable and encouraged Plaintiffs to work this "premier" account.

69.    Plaintiffs reasonably relied, to their detriment, on Jani-King's misrepresentations.  Plaintiffs relied on the information presented by Paul Johnson and the documents provided by Paul Johnson, which reflected the projected profits for the Qualcomm Account.  After September 4, 2012, Plaintiffs also relied on continued assertions by Jani-King personnel who claimed, after receiving advice and counsel from "corporate" (who is believed and alleged to be Sean Ayres), that the way to "fix" the account as to go to a "task based" approach, which would result in a profit.  Jani-King's misrepresentations were objectively material to the reasonable individual, and therefore reliance upon such representations may be presumed reasonable as a matter of law.

///

///

70.     As a proximate result of Jani-King's conduct, Plaintiffs were damaged, including sustaining substantial economic injury for loss of earnings, expenditures made in preparation and performance of their duties, and other economic losses.

71.     Accordingly, Plaintiffs are entitled to actual damages and compensatory damages.

72.     In addition, Plaintiffs suffered emotional distress damages for which they are entitled to compensation.

73.     The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' rights.   Consequently, Plaintiffs are entitled to punitive damages against Jani-King.

**SECOND CAUSE OF ACTION**
**Fraud/Deceit by Concealment**
**Violation of California Civil Code §§ 1709, 1710**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

74.     Plaintiff re-alleges and incorporates by reference, each and every allegation in paragraphs 1-73.

75.     At all times relevant to this action, Jani-King failed to disclose material facts including, but not limited to: (a) that the information and numbers presented to Plaintiffs at the June 22, 2012 meeting regarding the Qualcomm account were incorrect and not based on either historical data or on the numbers actually presented in the bid to the City of San Diego; (b) that Jani-King intentionally underbids its cleaning contracts with commercial clients such that it would not be possible for Plaintiffs to make a profit from the cleaning accounts offered; and (c) that Jani-King was made aware that the Qualcomm account was grossly underbid.

76.     Even after Plaintiffs presented Jani-King with information regarding the unsustainability of the Qualcomm account, Jani-King still failed to disclose the true facts related to this account, as stated above.    Both Jani-King of California Inc. (by and through, including, but not limited to, Randall Frazine) and Jani-King International, Inc. (by and through, including, but not limited to, Sean Ayres) met with Plaintiffs and continued to represent that the account would result in a significant profit.

///

77.     It is believed and hereon alleged that both Jani-King of California Inc. and Jani-King International Inc. were fully aware of the bid Jani-King of California, Inc. submitted to the City, knew that that amounts were underbid and knew that, based on historical data from previous years, the Qualcomm Account could not sustain the profit represented by either Paul Johnson or the profit represented to Plaintiffs in September 2012.    Both parties failed to disclose this material information to Plaintiffs.

78.     Jani-King knew of these material facts, has a duty to Plaintiffs to disclose these material facts, and intentionally failed to disclose these material facts.

79.     Plaintiffs reasonably relied to their detriment on Jani-King's omissions.   Jani-King's omissions were objectively material to the reasonable individual, and therefor reliance upon such representations may be presumed reasonable as a matter of law.

80.     As a proximate result of Jani-King's conduct, Plaintiffs were damaged and will continue to suffer damage, including substantial economic injury such loss of earnings, expenditures made in preparation and performance of their duties, and other economic losses.

81.     Accordingly, Plaintiffs are entitled to actual damages and compensatory damages.

82.     In addition, Plaintiffs suffered emotional distress damages to which they are entitled to compensation.

83.     The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' rights.   Consequently, Plaintiffs are entitled to punitive damages against Jani-King.

### THIRD CAUSE OF ACTION
### Negligent Misrepresentation
### Violation of California Civil Code §§ 1709, 1710
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

84.      Plaintiffs re-allege and incorporate by reference, each and every allegation in paragraphs 1-83.

85.     At all times relevant to this action, Jani-King misrepresented material facts including, but not limited to: (a) that the numbers presented to Plaintiffs at the June 22, 2012 meeting were incorrect and not based on either historical data or on the numbers actually

presented in the bid to the City of San Diego; (b) that Jani-King intentionally underbids its cleaning contracts with commercial clients such that it would not be possible for Plaintiffs to make a profit from the cleaning accounts offered; and (c) that Jani-King was made aware that the Qualcomm account was grossly underbid.

86.     Neither Jani King of California Inc. nor Jani-King International Inc. had reasonable grounds for believing the misrepresentations were true as (a) they had full knowledge that the Qualcomm account was grossly underbid (b) they had full knowledge that it historically took three days to complete post event cleaning and (c) that, based on the numbers, Plaintiffs would not make a profit on the Qualcomm account.

87.     Even after Plaintiffs presented Jani-King with information regarding the unsustainability of the Qualcomm account, Jani-King continued to misrepresent the profitability of the account.   Both Jani-King of California Inc. (by and through, including, but not limited to, Randall Frazine) and Jani-King International, Inc. (by and through, including, but not limited to, Sean Ayres) met with Plaintiffs and continued to represent that the account would result in a significant profit.

88.     It is believed and hereon alleged that both Jani-King of California Inc. and Jani-King International Inc. was fully aware of the bid Jani-King of California, Inc. submitted to the City, knew that that amounts were underbid and knew that, based on historical data from previous years, the Qualcomm Account could not sustain the profit represented by either Paul Johnson or the profit represented to Plaintiffs in September 2012.   Despite this, both Jani-King of California Inc. and Jani-King International Inc. continued to mislead Plaintiffs and misrepresent the sustainability of the Qualcomm account.

89.     Jani-King failed to exercise reasonable care and/or diligence in communicating its representations.

90.     Jani-King knew, or should have known, that its actions would cause damage to Plaintiffs because Jani-King was passing on its grossly underbid account on to Plaintiffs.

///

///

91.     Plaintiffs reasonably relied to their detriment on Jani-King's misrepresentations. Jani-King's misrepresentations were objectively material to the reasonable individual, and therefor reliance upon such representations may be presumed reasonable as a matter of law.

92.     As a proximate result of Jani-King's conduct, Plaintiffs were damaged, including sustaining substantial economic injury such as loss of earnings, expenditures made in preparation and performance of their duties, and other economic losses.

93.     Accordingly, Plaintiffs are entitled to actual damages and compensatory damages.

94.     In addition, Plaintiffs suffered emotional distress damages to which they are entitled to compensation.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**ALL PLAINTIFFS AGAINST JANI-KING OF CALIFORNIA, INC.**

95.     Plaintiffs re-allege and incorporate by reference, each and every allegation in paragraphs 1-94.

96.     Jani-King of California Inc., by it actions and inactions alleged herein, breached provisions of the Franchise Agreements, including, but not limited to its obligation (a) to "secure commercial cleaning and maintenance contracts and offer to Franchisee the opportunity to perform services in accordance with those commercial cleaning contracts…" (Section 4.3.1) (b) "to permit Franchisee the right to profit from its efforts, commensurate with its status as owner of its business and correspondingly, to bear the risk of loss or failure that is characteristic of this status" (Section 6.8) (c) "to make available to Franchisee applicable confidential manuals, training aids, and other pertinent information concerning Jani-King methods and practices" (Section 6.3), (d) "to provide additional training and support for Franchisee.." (Section 6.6), (d) "to make available to Franchisee the System and to provide Franchisee  with new developments in the cleaning services industry at the discretion of and as determined by Franchisor" (Section 6.9), (e) "to make available for Franchisee, at Franchisor's discretion and at a reasonable cost, promotional materials, sales and service manuals, equipment and other materials relevant to the

operation of a Jani-King franchise" (Section 6.10) and (f) Section 4, which requires Jani-King to provide accurate billing and accounting to the franchise owners.

97.   Jani-King failed to perform under its contractual agreement with Plaintiff.  Jani-King's refusal to perform was unlawful, without justification and/or excuse, and constituted a total and material breach of the contract between the parties.

98.   Jani-King breached the above referenced provisions of the Franchise Agreements with Plaintiff by doing inter alia, the following: (a) offering Plaintiffs accounts that Jani-King had full knowledge would not be profitable (b) making intentional misrepresentations to Plaintiffs regarding the history of the Qualcomm account and its profitability (c) failing to provide Plaintiffs with training which was mandated by Jani-King's contract with the City; (d) failing to advise Plaintiffs of material requirements included in Jani-King's contract with the City, subjecting Plaintiffs to potential liability (e) failing to adequately account for the charges Jani-King posted to Plaintiffs' account; (f) failing to properly advise Plaintiffs of account specifics before requiring Plaintiffs to accept an account, (g) failing to provide information related to the leasing of equipment, and (h) charging Plaintiffs for monies associated with leasing equipment, even though Plaintiffs did not sign any agreement to lease equipment on the Qualcomm Account.

99.   Plaintiffs gave consideration that was fair and reasonable, and performed the conditions, covenants, and promises required to be performed under their contracts with Jani-King.

100.   By reason of Jani-King's breaches, Plaintiff suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including loss of earnings, expenses for cleaning supplies, transportation costs, leasing costs and other damages for breach of contract.

101.   Jani-King directly benefitted from, and was unjustly enriched by, its contractual breaches alleged herein.

102.   Plaintiffs have been damaged by Jani-King's breach of contract in an amount to be proven at trial.

///

### FIFTH CAUSE OF ACTION
### Breach of Contract (Lease)
### PLAINTIFF GUTIERREZ AGAINST JANI-KING OF CALIFORNIA, INC.

103.   Plaintiff Gutierrez re-alleges and incorporates by reference, each and every allegation in paragraphs 1-102.

104.   On or about June 2013, Jani-King of California Inc. entered into several Equipment Lease Assumption agreements ("Lease Assumption Agreements") (Exhibit 4) with Plaintiff Mario Gutierrez, for the lease of certain equipment related to the accounts for Whole Foods.

105.   It is believed on hereon alleged that, despite Plaintiff Gutierrez turning in the Whole Foods accounts also in June 2013, and returning the leased equipment to Jani-King of California, Inc. in or about September 2013 (which Jani-King accepted), Jani-King of California Inc., continues to improperly bill Plaintiff Gutierrez under the Lease Assumption Agreements.

106.   Jani-King, by it actions and alleged herein, breached provisions of the Lease Assumption Agreements which require Jani-King to "determine [Plaintiff's] termination liability on an early termination basis."   Jani-King has failed to provide Plaintiff with any information regarding Plaintiff's early termination liability, nor provided him with any accounting or appraisal of the equipment after Jani-King accepted the equipment back from Plaintiff in or about September 2013.   Jani-King however, continues, to date, to bill Plaintiff Gutierrez for the full amount of the leased equipment.

107.   Plaintiff performed the conditions, covenants, and promises required to be performed under the agreement with Jani-King.

108.   By reason of Jani-King's breach, Plaintiff suffered and will continue to suffer reasonable and foreseeable damages including costs for such leased equipment that Plaintiff no longer has in his possession.

109.   Jani-King directly benefitted from and continues to benefit from its retention of the equipment while continuing to bill Plaintiff for the full amount under the Lease.

///

110.   Plaintiff has been damaged by Jani-King's breach of contract in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (ALL PLAINTIFFS AGAINST JANI-KING OF CALIFORNIA, INC.)

111.   Plaintiffs re-allege and incorporate by reference, each and every allegation in paragraphs 1-110.

112.   Under common law, a covenant of good faith and fair dealing is implied into every contract.

113.   Jani-King has violated and continues to violate this covenant of good faith and fair dealing in its agreements with Plaintiffs by doing, including, but not limited to, the following:

(a)   Jani-King significantly underbids the cleaning contracts it negotiates with its commercial clients and thereafter assigned such contracts to Plaintiffs making it impossible for Plaintiffs to operate a viable business;

(b)   Jani-King offered accounts to Plaintiffs without sufficient notice or information, such that Plaintiffs could not make informed decisions and thereby making it impossible for Plaintiffs to operate a viable business;

(c)   Making intentional misrepresentations to Plaintiffs regarding the history of the Qualcomm account and its profitability and promising Plaintiffs false profits;

(d)   Failing to provide Plaintiffs with training which was mandated by Jani-King's contract with the City;

(e)   Failing to advise Plaintiffs of material requirements included in Jani-King's contract with the City, subjecting Plaintiffs to potential liability;

(f)   Failing to adequately account for the charges Jani-King posted to Plaintiffs' account;

(g)   Failing to properly advise Plaintiffs of account specifics before requiring Plaintiffs to accept an account;

(h)   Failing to provide information related to the leasing of equipment.

(i)    Requiring Plaintiffs to pay individuals for time spent working on the Qualcomm account, even though those individuals were working prior to Plaintiffs accepting the Qualcomm account; and

(j)    Charging Plaintiffs "leasing" costs for equipment on the Qualcomm account, even though Plaintiffs never agreed to lease, or signed any agreement, to lease equipment.

114.    As a result of Jani-King's breach of this implied covenant, Plaintiffs suffered and will continue to suffer reasonable and foreseeable consequential damages, including loss of earnings expenses for cleaning supplies, transportation costs, leasing costs and other damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Violations of California Business Code § 17200 *et seq.*
### (ALL PLANTIFFS AGAINST ALL DEFENDANTS)

115.    Plaintiffs re-allege and incorporate by reference, each and every allegation in paragraphs 1-114.

116.    The California Unfair Competition Law, Cal. Bus. &Prof. Code § 17200 *et seq.* ("UCL"), defines unfair competition to include any "unlawful," "unfair" or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200.

117.    Jani-King's conduct as described above constitutes unlawful business practices for the reasons set forth below, without limitation:

(a)    Jani-King of California, Inc. and Jani-King International, Inc. has committed torts of intentional misrepresentation, concealment, and negligent misrepresentation as described above;

(b)    Jani-King of California, Inc. has breached the franchise contracts as described above;

(c)    Jani-King of California Inc. induced Plaintiffs to accept the Qualcomm account based on willful misrepresentations by Jani-King of California Inc. representatives.  Jani-King knew that it grossly underbid the Qualcomm account, yet it passed on the account to

unsuspecting Plaintiffs, with false promises of compensation.  Jani-King represented to Plaintiffs it would take three days to clean the stadium, yet it was fully aware that its bid only included man hours for two days.  Jani-King also knew, based on historical data from prior years, that post event cleaning could not be performed in two days;

(d)     Jani-King of California Inc. brought in a representative from "corporate," alleged to be Sean Ayres with Jani-King International, Inc. to oversee the Qualcomm account issue.   Sean Ayres met with Plaintiffs in September 2012 and, despite knowing the true facts about the unsustainability of the Qualcomm Account, he perpetuated the fraudulent representations that the account would make a profit, concealing the truth from Plaintiffs.

(e)     Jani-King of California Inc. offered a contract to Plaintiffs that was filled with unconscionable terms;

(f)     Jani-King of California Inc. lured Plaintiffs into accepting the Qualcomm account, knowing it would not be profitable, yet continued to charge Plaintiffs with exorbitant fees;

(g)     Jani-King of California Inc. systematically underbids other cleaning accounts, charging excessive and unwarranted fees, deducting these fees from any income generated by Plaintiffs;

(h)     Jani-King of California Inc. routinely refuses to provide adequate information about the nature of the cleaning services required at its cleaning accounts and requires Plaintiffs to "accept" the accounts prior to them viewing the premises;

(i)      Jani-King of California Inc. failed to properly train Plaintiffs as was required under its contract with the City of San Diego;

(j)     Jani-King of California Inc. lied to the City regarding the "employees" which would be working on the Qualcomm account and represented that those "employees" had received specific training; which they had not;

(k)     Jani-King of California Inc. failed to advise Plaintiffs of specific requirements in Jani-King's contract with the City which required "green" cleaning supplies.  Jani-King never informed Plaintiffs of this requirement, nor provided Plaintiffs with supplies that

satisfied this requirement. Further, because of Jani-King's representation in its bid, the City of San Diego and members of the public in general were deceived into believing that Qualcomm Stadium was being cleaned with "green" cleaning supplies;

(l)     Jani-King of California Inc. routinely fails to provide Plaintiffs with information regarding the leasing of equipment, but yet continues to charge Plaintiffs fees for such leases.  If Plaintiffs did execute a lease for equipment, when Plaintiffs turn in an account, Jani-King refuses to honor the terms of the contract but continues to charge Plaintiffs with lease fees; and

(m)     Jani-King of California Inc. required Plaintiffs to pay individuals for time spent working on the Qualcomm account, even though those individuals were working prior to Plaintiffs accepting the Qualcomm account.

(n)     Jani-King of California Inc. continues to improperly bill Plaintiff Gutierrez for charges related to leased equipment, despite Plaintiff Gutierrez turning in the cleaning account and returning the leased equipment to Jani-King of California, Inc.

118.    As a result of Jani-King's unlawful, unfair, and fraudulent conduct, Plaintiffs suffered injury in fact and lost money, including, but not limited to loss of earnings promised, loss of income, expense for cleaning supplies, leasing costs and transportation costs.

119.    Pursuant to California Business and Professions Code §17203, Plaintiffs seek declaratory relief for Jani-King's unlawful, unfair and fraudulent conduct and to recover restitution.

120.    Pursuant to California Business and Professions Code § 1021.5, Plaintiffs are entitled to recover reasonable attorney's fees, costs, and expenses incurred in bringing this action.

### EIGHTH CAUSE OF ACTION
### Intentional  Infliction of Emotional Distress
### (AGAINST ALL DEFENDANTS )

121.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1-120 as though fully set forth herein.

///

122.   Defendants engaged in outrageous and unprivileged conduct that Plaintiffs are informed and believes was intended to cause his harm.  Alternatively, Defendants acted with reckless disregard of the probability that Plaintiffs would suffer severe emotional distress as a result of their outrageous conduct as described *supra*.

123.   As a direct and proximate result of Defendants,' and each of their, outrageous, unprivileged, and extreme conduct alleged above, Plaintiffs suffered severe, substantial and enduring emotional distress, including humiliation, embarrassment, anxiety and indignity, as more fully set forth in Paragraphs 44 and 45 above, in an amount which will be proven at trial.

124.   Defendants', and each of their conduct, was intentional and malicious, and done for the purpose of causing Plaintiffs to suffer severe, substantial and enduring humiliation, mental anguish, and emotional and physical distress.

125.   In failing to correct, prevent or refrain from fraudulent conduct, Defendants caused Plaintiffs severe harm.  Defendants', and each of their, conduct was malicious and oppressive, in willful and conscious disregard of Plaintiffs' rights and subjected Plaintiffs to cruel and unjust hardship.  Thus, an award of exemplary and punitive damages is justified in an amount to be proven at trial.

<u>**NINTH CAUSE OF ACTION**</u>
<u>**DECLARATORY RELIEF**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>

126.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 125 above as though fully set forth herein.

127.   An actual controversy has arisen and now exists between Plaintiffs and Defendants, concerning their respective rights and duties under the Franchise Agreements in that (a) Plaintiffs assert multiple causes of action against Defendants and (b) inasmuch as Plaintiffs contend that Defendants' actions were willful and malicious, Plaintiffs demand an award for punitive damages.

128.   The Franchise Agreements between Plaintiffs and Jani-King provide the following:  THE PARTIES AGREE THAT ANY DAMAGES SOUGHT BY OR AWARDED

TO FRANCHISEE SHALL BE LIMITED TO FRANCHISEE'S TOTAL INVESTMENT WITH FRANCHISOR, AND NO PUNITIVE DAMAGES OR EXEMPLERY DAMAGES WILL BE AWARDED TO FRANCHISEE."

129.   Plaintiffs believe and allege that the above referenced language contained in the Franchise Agreements is unconscionable and against public policy, as it is facially one-sided, as the damages limit is only applicable to the Franchisee.

130.   Plaintiffs desire a judicial determination, interpretation and declaration that the foregoing Franchise Agreement language is unenforceable as it is contained within a contract of adhesion and the language is unconscionable and contrary to public policy.

131.   A judicial determination, interpretation and declaration is necessary and appropriate at this time so that Plaintiffs may properly exercise their rights under the provisions of the Franchise Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs make the following demand:

(a)   For general, special, actual, compensatory and/or nominal damages as against Defendants, and each of them, in an amount to be determined at trial;

(b)   For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants, and each of them, from further engaging in the conduct described herein;

(c)   That Jani-King be ordered to make restitution to Plaintiffs pursuant to California Business and Professions Code § 17200;

(d)   That the court make such orders as may be necessary to restore to Plaintiff any monies which may have been obtained from them by means of Defendants' unlawful, unfair, and fraudulent business practices pursuant to California Business and Professions Code §§ 17203 and 17535;

(e)   For a judicial determination declaring that Defendants' limit on punitive damages contained in its Franchise Agreements is unenforceable;

1    (f)    For statutory penalties as allowed by law;

2    (g)    For costs and expenses of this litigation;

3    (h)    For reasonable attorneys' fees where appropriate and allowed by law;

4    (i)    For pre and post-judgment interest on all damages and other relief awarded herein

5    from all entities against whom such relief may be properly awarded; and,

6    (j)    For all such other relief as this Court deems just and appropriate.

7

8    Dated:   March 17, 2014                          **GERVAIS LAW**

9

10

11                                              Kara L. Gervais, Esq., attorneys for Plaintiffs
                                                Tervon LLC, Sunyata and Eleanor Little and
12                                              Mario Gutierrez

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document [AMENDED COMPLAINT FOR DAMAGES] was forwarded via electronic mail and U.S. Mail on the 18th day of March, 2014 to:

Paul Kissel, Esq.
Jonathan P. Geen, Esq.
BORTON PETRINI, LLP
1320 Columbia Street, Suite 210
San Diego, CA 92101

Peter L. Loh, Esq.
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201-4761

Kara L. Gervais